UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REIS, INC. and REIS SERVICES, LLC,

                        Plaintiffs,

            - against -

ARMADA ANALYTICS, INC.,

                        Defendants.

___ Civ. _____ (   )

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Reis, Inc. and Reis Services, LLC (collectively, "Reis") allege the following based upon personal knowledge as to their own actions and upon information and belief as to all other matters:

### Nature of the Action

1. This is an action for data piracy brought under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* Defendant Armada Analytics, Inc., including, unless otherwise stated, its agents, officers, employees, and other personnel under its control (collectively, "Armada" or "Defendant") has been using misappropriated login credentials to access Reis's proprietary subscription database without authorization and to download—without paying—thousands of commercial analytic reports. Reis's legitimate users pay tens or hundreds of thousands of dollars in annual subscription fees to obtain these reports.

2. Reis's proprietary database (the "Reis Database") has been developed and maintained by Reis through extraordinary investment, effort, and creativity over the last 34 years. Reis, Inc. is a public company that is a leader in providing up-to-date commercial real estate market information and analysis. The Reis Database contains detailed information on

1

7909003

commercial properties in 275 of the largest metropolitan markets and over 7,000 discrete neighborhoods throughout the United States.

3.     Because the Reis Database is of great value to those working in the field of commercial real estate, it has unfortunately become a target for data pirates and others wishing to benefit from Reis's services without paying for them.  To combat this piracy, Reis's Compliance Group diligently investigates unusual patterns of use and other signs of possible theft of the data from the Reis Database.

4.     Reis's investigations recently revealed unusual data access and download patterns by users located at Internet Protocol ("IP") addresses 173.226.91.66, 71.59.14.203, and 71.59.17.199, which Reis learned are associated with Defendant.

5.     Upon further investigation, Reis confirmed that multiple employees or affiliates of Defendant were using misappropriated login credentials that were issued to individuals associated with institutions that are licensed Reis subscribers.  Defendant has never been a Reis subscriber and has never received direct or indirect authorization to use the Reis Database.  Reis subscribers are expressly prohibited from sharing their login credentials with third parties.

6.     After Reis learned of Defendant's unauthorized use of its database and demanded payment from Defendant, the Defendant stopped using the Reis Database from the IP addresses identified in Paragraph 4.  Upon information and belief, the Defendant has continued to obtain Reis reports through other Reis subscribers.

7.     Between February 2011 and March 2014, Defendant downloaded, without authorization, at least 1,562 proprietary reports from the Reis Database with a retail value of $629,010.  Defendant has not compensated Reis for this use of the Reis Database.

8. By using unauthorized login credentials, Defendant has been able to access, download, and use data and information from the Reis Database without paying either (i) the retail price for the reports that is charged to non-subscribers or (ii) a subscription fee required to license the information from Reis. Defendant has thus stolen at least $629,010 worth of data from Reis. This action seeks to hold it accountable for that misconduct.

### Parties

9. Plaintiff Reis, Inc. is a Maryland corporation with its principal place of business in New York, New York. Reis provides commercial real estate market information and analytical tools to real estate professionals through its subsidiary, plaintiff Reis Services, LLC.

10. Plaintiff Reis Services, LLC is a Maryland limited liability company with its principal place of business in New York, New York.

11. Upon information and belief, Defendant Armada Analytics, Inc. is a South Carolina corporation with its principal place of business in Greenville, South Carolina.

### Jurisdiction and Venue

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

### Facts

**Reis's Business and the Reis Database**

14. Reis (including its predecessors) was founded in 1980 and is recognized by the real estate industry and the business and trade press as one of the premier sources of objective, timely, and granular market information. This reputation was built by hard work and investment.

3

7909003

Significantly, Reis's work is particularly valued because of its objectivity; Reis is independent of property owners and developers and does not compete as a broker in the listings space.

15. The Reis Database contains information on apartment, office, retail, warehouse/distribution, flex/research and development, self-storage, and seniors housing properties, and is used by real estate investors, lenders, and other professionals to make informed buying, selling, and financing decisions.  In addition, Reis data is used by debt and equity investors to assess, quantify, and manage risks of default and loss associated with individual mortgages, properties, portfolios, and real-estate-backed securities.  Reis's products are designed to meet the demand for timely and accurate information to support the decision-making of its customers.

16. To maintain its position as a market leader, Reis continually invests in the databases, technologies, intellectual capital, and personnel (including over 200 employees) critical to supporting the ever-increasing information needs of commercial real estate professionals.  Without access to the proprietary information developed and maintained by Reis, it would be incredibly burdensome, expensive and time consuming for a licensee (or other interested professional) to obtain equivalent in-depth information.  Most professional real estate investors do not want to devote the resources to creating an in-house infrastructure capable of performing this work, which is why they subscribe to Reis's services.

17. Reis offers a variety of product delivery services that cater to the needs of different types of users.  They include *Reis SE*, Reis's flagship delivery platform aimed at larger and mid-sized enterprises; *ReisReports*, aimed at other professional customers and smaller enterprises; and *Mobiuss Portfolio CRE*, or *Mobiuss*, aimed primarily at risk managers and credit

administrators at banks and non-bank lending institutions.  It is through these products that Reis provides online access to the Reis Database.

18. In addition, Reis continues to develop and introduce new products, expand and add markets and data, and find new ways to deliver existing information to meet client demand. The depth and breadth of Reis's data and expertise are critical in allowing Reis to grow its business.  To maintain its position, Reis continuously expends substantial additional investments and efforts to maintain and improve its offerings and ensure their currency.

**Subscriptions to the Reis Database**

19. Reis offers users a choice between pay-as-you-go access to the Reis Database and subscription-based access.  Both involve fee-based access pursuant to a license agreement with Reis.  Data from the Reis Database is made available in six ways, with price points that reflect the level of content being purchased:

- annual and multi-year subscriptions to *Reis SE* ranging in price from $1,000 to over $1,000,000, depending on the subscriber's line of business, the number of subscriber employees licensed to use the service, the anticipated frequency of access and the combination of markets, property types, and reports subscribed to, for which the subscriber is typically allowed to download an unlimited number of reports over the subscription period in return for the up-front commitment to a fixed annual fee;

- annual and multi-year subscriptions to *Mobiuss* typically ranging in price from the low tens of thousands of dollars into the hundreds of thousands of dollars;

- capped *Reis SE* subscriptions ranging in price from $1,000 to $25,000, allowing clients to download content up to a ceiling defined by the contractually agreed maximum retail value of reports over a particular period of up to twelve months;

- subscriptions to *ReisReports*, which are charged to a credit card, having a retail price ranging up to $150 per month, with monthly or annual pricing options available;

- custom data deliverables ranging in price from $1,000 for a specific data element to hundreds of thousands of dollars for custom portfolio valuation and credit analysis; and

- individual reports, which can be purchased with a credit card, having retail prices up to $999 per report and are available to anyone who visits Reis's retail website or contacts Reis by telephone, fax or e-mail. Certain reports, however, are available only with an annual subscription or capped subscription account.

20. Reis provides its information services to many of the nation's leading lending institutions, equity investors, brokers, and appraisers, all of which pay fees of up to several hundred thousand dollars per year in order to use the Reis Database.

21. As of June 30, 2015, Reis had 988 enterprise subscribers under signed contracts for its core *Reis SE* product. A subscribing entity may have one or many users entitled to access *Reis SE*. The number of users is a negotiated term of the contract, with higher prices generally charged to those subscribers who want more of their employees to have access. In addition to these enterprise subscribers, there are other users who pay the individual reports by credit card, subscribers to the *ReisReports* product, and additional users of information available on third party platforms through Reis's data redistribution relationships.

22.     The vast majority of Reis's subscribers have utilized its core product for many years.

**Access to the Reis Database**

23.     The Reis Database is protected by a firewall.  Access to the Reis Database is by secure password and can be customized to accommodate the coverage, property type, and analytical needs of subscribers, providing access only to those portions of the database that the subscriber has paid to see.  To protect its proprietary rights, Reis also relies on, among other things, restrictive license agreements with subscribers.

24.     When a company enters into a license agreement with Reis, it may obtain licenses for an agreed number of employees or other users associated with the company.  Each individual user is then issued his or her own login credentials consisting of a unique username and password to access the Reis Database.

25.     Users are not allowed to share passwords with colleagues who work for a subscriber, much less with third parties.  Nor may they take them to a new employer if they cease to work for the subscriber.  Reis's Terms of Service, found on its website at https://www.reis.com/terms-of-service, and attached in substantially similar form to its subscriber agreements, explicitly prohibits its licensees to "resell or transfer . . . use of or access to" the Reis Database and elsewhere states that "[t]ransfer or assignment of your password and user name to another individual is strictly prohibited."

26.     All users of the Reis Database, whether subscribers or first-time consumers, agree to be bound by the "terms, conditions, and notices contained" in the Terms of Service, and use of the Reis Database indicates acceptance of the Terms of Service.  Among other things, the terms

require payment of fees for use of the Reis Database and obligate users to refrain from acting "in such a manner" so as to cause Reis the "loss of a potential sale or subscription."

27. Reis also maintains an Anti-piracy Policy on its website at https://www.reis.com/anti-piracy-policy, which policy defines "piracy" as "using our service without a license to do so, enabling or trying to enable a third party who is not authorized to use our service to use our service, or exceeding the scope of the uses permitted you under a license agreement between you and Reis."

28. Links to Reis's Terms of Service and Anti-piracy Policy are clearly labeled on the sign-in page of the Reis Database under the heading "LEGAL," which is prominently displayed one inch below the sign-in fields. These links put users on notice that their access and use of the Reis Database are subject to the Terms of Service. A screen shot of the login page is provided here:



29. When authorized Reis Database users leave or are otherwise dissociated from Reis's subscribers, the Terms and Conditions incorporated into Reis's subscription agreements require the subscribers to notify Reis. This allows Reis to disable the departed employee's login credentials and at the subscriber's request, issue new ones to another employee instead.

**Defendant's Unauthorized Use of the Reis Database**

30. Reis's Compliance Group recently uncovered patterns of activity where login credentials assigned to individuals at a subscribing company were being used repeatedly and for long periods of time from IP addresses that do not track back to the subscribing company associated with the credentials.

31. Specifically, between at least February 2011 and April 2014, the login credentials associated with seven employees of four long-term subscribers to Reis's services were used from the IP addresses 173.226.91.66, 71.59.14.203, and 71.59.17.199.

32. The first IP address, 173.226.91.66, is associated with Defendant by using the "reverse lookup" feature of various brand protection and cybercrime investigation tools. Through registration activity on Reis's public-facing website, David Beall, a principal of Armada, has identified himself by providing his name and his armadaanalytics.com email address, as the user on the other two IP addresses 71.59.14.203 and 71.59.17.199. These two IP addresses contain usage activity from one of the sets of Reis login credentials that also appear on 173.226.91.66.

33. Neither David Bealls nor Defendant is an authorized licensee of Reis. Neither is an authorized user of login credentials associated with any Reis licensee.

34. Upon further investigation, Reis learned that Defendant had obtained the login credentials from the Reis subscribers and purported to use them on the subscribers' behalf.

Under Reis's terms of service, subscribers are "strictly prohibited" from allowing login credentials to be used by anyone besides the individual to whom they are issued.

35. Over a three-year period, Defendant has, without authorization, downloaded at least 1,562 reports with a retail value of $629,010 from the Reis Database.

36. Upon information and belief, Defendant's unauthorized intrusions into the Reis Database were knowing and willful because Defendant's principals and employees knew that Defendant was not an authorized licensee of Reis; knew that none of Defendant's principals or employees was an authorized user of login credentials associated with Reis customers; knew that Defendant had not paid for access to the Reis Database; and were on notice from the Terms of Service posted on the database that login credentials are not transferable.

37. Upon information and belief, Defendant has accessed, downloaded and used Reis's proprietary data and information without compensating Reis and, as a result, has damaged Reis, including by: (a) preventing Reis from collecting its customary charges for its proprietary data and information services; (b) preventing Reis from fully exploiting its licensing opportunities; and (c) causing Reis to devote time, money, and valuable resources to maintain the security of its database for licensees and paying customers.

38. Reis has suffered damages as a result of Defendant's unauthorized access, downloading, and use of data and information from the Reis Database.

39. Reis demands a trial by jury.

## Count I
### (Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030)

40. Reis repeats and incorporates the allegations of Paragraphs 1 through 39 of this Complaint as if set forth here.

7909003

41.     The Reis Database consists of servers and computers that are used in interstate commerce and comprise a "protected computer" as that term is used in 18 U.S.C. § 1030(e)(2)(B).

42.     Reis has maintained and secured the Reis Database by reasonable means at all relevant times.

43.     Defendant intentionally accessed Reis's protected computer without authorization and thereby obtained proprietary data and information services from the Reis Database. *See* 18 U.S.C. § 1030(a)(2)(C).

44.     Defendant knowingly and with intent to defraud accessed Reis's protected computer without authorization and by means of that conduct furthered the intended fraud and obtained proprietary data and information services from the Reis Database with a retail value of $629,010. *See* 18 U.S.C. § 1030(a)(4).

45.     Defendant intentionally accessed Reis's protected computers without authorization and, as a result, caused a loss to Reis.

46.     As a result of Defendant's conduct, Reis has suffered loss in attempting to protect its rights against unauthorized access, downloading, and use of data and information stored in the Reis Database and in expending time, money, and resources (aggregating at least $5,000 in value) to conduct an investigation into the intrusion and a damages assessment.

47.     Determining the identity of a suspicious user is an essential part of Reis's damage assessment because the only way to determine whether a loss has occurred is to identify the user and determine whether it is acting pursuant to a duly issued license either by way of a Reis Subscriber Agreement or as a registered user paying for reports as they are accessed and downloaded from Reis.com.

48. As part of the on-going investigation of Defendant's access and use of the Reis Database, Reis developed its own proprietary investigatory software at a cost of $76,364 in hourly wages of Reis developers from June 2014 through May 2015.

49. The development of this software included many enhancements and fixes as Reis continued to investigate intrusions into its computer system by the Defendant and others. This process was necessary to keep up with the methods of persons like the Defendant which seek to mask access and use of the Reis Database from Reis's view by using credentials issued to legitimate Reis licensees from various IP addresses not readily traceable to the authorized users.

50. Had the Reis developers not been working on this proprietary investigatory software tool, they would have been working to enhance and improve the Reis Database and the services provided to Reis clients.

51. The role of this software is to investigate and identify suspicious patterns of usage of Reis's computers. When such patterns are found, they are further investigated by persons in the Reis Compliance Group at a substantial cost to Reis to determine whether the usage is licensed or not.

52. This software has been used to investigate unauthorized intrusions into the Reis Database, including by the Defendant.

53. In addition, Reis's Vice President of Product Development and Intellectual Property spent on average $4,900 per month of time in 2014 and 2015 using this investigatory software tool to identify piracy. The value of the Reis employees' time in investigating the Defendant's access and use of Reis's computer system exceeded $5,000 in one calendar year.

7909003

54. Reis has also suffered economic damages in the amount of the lost retail value of the reports taken by the Defendant without a license in an amount to be determined at trial, but which is in excess of $629,010.

55. As a result of Defendant's conduct, Reis has also suffered damage to its business and goodwill.

56. Reis is therefore entitled to compensatory damages under the CFAA.

## Count II
### (Breach of Contract)

57. Reis repeats and incorporates the allegations of Paragraphs 1 through 56 of this Complaint as if set forth here.

58. Use of the Reis Database is governed by and subject to the Terms of Service located on the sign-in page of the Reis Database.

59. At all relevant times, Reis prominently displayed a link to the Terms of Service on the sign-in page of the Reis Database.

60. The Terms of Service is a valid, enforceable contract through which Reis provides authorized users with a limited license to use the Reis Database.  By entering into this contract, users agreed to pay fees associated with use of the Reis Database—either on a per-item basis or pursuant to a prearranged subscription agreement.

61. By entering into this contract, Defendant purposefully availed itself of the privilege of conducting business in New York.

62. Defendant materially breached the Terms of Service by repeatedly accessing and downloading documents from the Reis Database without compensating Reis for this privilege and with knowledge of the Terms of Service.

63. As a direct and proximate result of Defendant's material breach of the Terms of Service, Reis has been harmed and is entitled to monetary damages in an amount to be determined at trial, but at least $629,010, exclusive of attorney's fees, costs, interest, and punitive damages.

## Count III
### (Conversion and Theft)

64. Reis repeats and incorporates the allegations of Paragraphs 1 through 63 of this Complaint as if set forth here.

65. The Defendant downloaded more than 1,500 reports from the Reis Database without paying for them.

66. In doing so, the Defendant exercised unauthorized control and ownership over each downloaded report, to the exclusion of Plaintiffs.

67. As a result, Reis suffered damage in the form of a lost sale for each report taken by the Defendant.

68. Defendant consumed those reports, used them, and could not return them to Reis.

69. Defendant acted in willful disregard of Reis's property rights in its reports.

70. The value of the reports taken by Defendant was at least $629,010.

71. As a direct and proximate result of Defendant's actions, Reis has suffered and will continue to suffer injury and damage in an amount to be determined at trial, but not less than $629,010, exclusive of attorney's fees, costs, interest, and punitive damages.

## Count IV
### (Misappropriation)

72. Reis repeats and incorporates the allegations of Paragraphs 1 through 71 of this Complaint as if set forth here.

73. Defendant downloaded more than 1,500 reports from the Reis Database without paying for them.

74. Those reports were valuable, novel and original compilations of data used by Reis in its business.

75. The reports were compiled at considerable expense to Reis and provided Reis with an advantage over its competitors.

76. As set forth above, Reis did not allow access to the reports without payment or license and protected the reports contractually and technologically from unauthorized access.

77. Defendant improperly accessed and used the reports for its benefit without authorization by Reis.

78. As a result, Reis was damaged for each report misappropriated by Defendant.

79. The value of the reports taken by the Defendant is at least $629,010.

80. Reis has suffered and will continue to suffer injury and damage in an amount to be determined at trial, but not less than $629,010, exclusive of attorney's fees, costs, interest, and punitive damages.

### Count V
### (Unjust Enrichment)

81. Reis repeats and incorporates the allegations of Paragraphs 1 through 80 of this Complaint as if set forth here.

82. Defendant has accessed, downloaded, and used at least $629,010 worth of data and information from the Reis Database, but has provided no value in return to Reis.

83. Thus, Defendant has been unjustly enriched at the expense of Reis in an amount to be determined at trial, but at least $629,010.

7909003

84. It is against equity and good conscience to permit Defendant to retain the valuable information Reis seeks to recover herein.

85. Defendant's actions were knowing, intentional, and willful.

86. Defendant is therefore liable to Reis in unjust enrichment in an amount to be determined at trial, but not less than $629,010, exclusive of attorney's fees, costs, interest, and punitive damages.

## Count VI
### (Quantum Meruit)

87. Reis repeats and incorporates the allegations of Paragraphs 1 through 86 of this Complaint as if set forth here.

88. Defendant has received substantial economic benefit and competitive edge by accessing, downloading, and using proprietary reports from the Reis Database.

89. Defendant only obtained these benefits because it unlawfully accessed, downloaded, and used proprietary reports from the Reis Database for its own economic and competitive advantage.

90. It is inequitable and unjust for Defendant to have obtained the benefit of using the Reis Database for its own economic and competitive advantage without justly compensating Reis.

91. As a direct and proximate result of the Defendant's actions, Reis has suffered and will continue to suffer injury and damage in an amount to be proven at trial, but at least $629,010.

92. Defendant is therefore liable to Reis in quantum meruit in an amount to be determined at trial, but not less than $629,010, exclusive of attorney's fees, costs, interest, and punitive damages.

7909003

## Prayer for Relief

WHEREFORE, Reis respectfully requests that the Court enter judgment in its favor and award the following relief against Defendant:

a. That the Court award compensatory damages of at least $629,010, plus interest and costs;

b. That the Court award punitive damages in an amount to be determined at trial;

c. That the Court award Reis its attorney's fees and expenses; and

d. That the Court award Reis such other and further relief as is just and proper under the circumstances.

Dated: New York, New York
September 9, 2015

By: /s/ Geoffrey Potter
**Patterson Belknap Webb & Tyler LLP**

Geoffrey Potter
Aron Fischer
Scott Caplan

1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000
gpotter@pbwt.com
afischer@pbwt.com
scaplan@pbwt.com

*Attorneys for Plaintiffs Reis, Inc. and Reis Services, LLC*

7909003